UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MADELEINE BRAND and JOHN BOWDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GODIVA CHOCOLATIER, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Madeleine Brand and John Bowden (hereinafter "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action lawsuit against Defendant Godiva Chocolatier, Inc. d/b/a Godiva ("Godiva" or "Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

**NATURE OF THE ACTION**

1.  This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of its Godiva Signature 72% Cacao Dark Chocolate bar products (collectively the "Affected Products") which contain unsafe levels of lead. The marketing for and labeling of the Affected Products are silent as to the presence of elevated lead levels in the Affected Products. Godiva's advertising and packaging are false, misleading, and reasonably likely to deceive the public.

1

2. Lead is a harmful chemical when consumed and is especially dangerous to pregnant women and children. Lead poisoning occurs when lead builds up in the body, over months or years.[1]

3. Any amount of lead exposure can lead to serious health problems. Children younger than 6 years are especially vulnerable to even mild lead exposure, which can severely affect mental and physical development.[2] At high levels, lead poisoning can be fatal in adults and children.[3]

4. A December 2022 report by Consumer Reports revealed that a selection of dark chocolate bars sold to the public, including the Affected Products, contained concerning levels of heavy metals: specifically, cadmium and lead.[4]

5. In November of 1986, California passed the Safe Drinking Water and Toxic Enforcement Act, which came to be known by its legislative name "Prop 65." Proposition 65 requires businesses to provide warnings to Californians about significant exposures to chemicals that cause cancer, birth defects or other reproductive harm.[5] As a part of that standard, California's experts set regulatory standards for acceptable levels of exposure to toxic chemicals, referred to as the maximum allowable dose levels ("MADLs") in chemicals which are identified as causing cancer, birth defects, or reproductive harm.[6]

---

[1] *Lead poisoning*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717 (last visited January 12, 2023).
[2] *Id.*
[3] *Id.*
[4] Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, CONSUMER REPORTS (Dec. 15, 2022) https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last visited January 12, 2023).
[5] *About Proposition 65*, OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, https://oehha.ca.gov/proposition-65/about-proposition-65 (last visited January 12, 2023).
[6] *The mysterious world of Prop 65, part 8: Acceptable risk levels*, CONSUMER PRODUCTS LAW BLOG (Feb. 19, 2015) https://www.consumerproductslawblog.com/2015/02/the-mysterious-world-of-prop-65-part-8-acceptable-risk-levels/ (last visited January 12, 2023).

6. Consumer Reports referenced California's MADLs for lead (0.5 Micrograms) and cadmium (4.1mcg). The testing performed found that Godiva's Signature 72% Cacao Dark Chocolate bars product contained 146% of the MADL of lead.[7]

7. Defendant knew or should have known that its representations and advertisements regarding the Affected Products were false and misleading and that they failed to disclose material information. Defendant had been part of a previous Heavy Metal matter in 2016 raised by watchdog group As You Sow, which filed Proposition 65 Notices for elevated lead and cadmium levels found in the products of multiple dark chocolate brands, including Godiva.[8]

8. Consumers could not have known about the unsafe levels of lead in the Affected Products before purchasing them without having conducted extensive and expensive scientific testing. Defendant, on the other hand, is positioned to test its products and has exclusive knowledge of the quality control testing on the Affected Products and the ingredients contained therein.

9. Accordingly, consumers relied, and continue to rely, on Defendant to be truthful regarding the ingredients, including the presence of the dangerous heavy metals in the Affected Products.

10. If Plaintiffs knew that the Affected Products contained unsafe levels of lead, they would not have purchased the Affected Products on the same terms, if at all.

11. Plaintiffs and those similarly situated purchasers ("Class Members") relied on Defendant's misrepresentations and omissions that the Affected Products contained only those ingredients listed on the Affected Products packaging and labeling.

12. Plaintiffs and Class Members paid a premium for the Affected Products based upon Defendant's marketing and advertising campaign. Given that Plaintiffs and Class Members paid a

---

[7] *Id.*
[8] See Danielle Fugere, *Notice of Violation of California Health and Safety Code § 25249.5 et seq.*, AS YOU SOW (Mar. 24, 2016) https://oag.ca.gov/system/files/prop65/notices/2016-00256_0.pdf (last visited January 17, 2023).

premium for the Affected Products based on Defendant's misrepresentations and omissions, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

13.     Defendant's conduct violated and continues to violate Virginia's Consumer Protection Act ("VCPA") Va. Code Ann. §§ 59.1-196 *et seq*. Defendant also breached and continues to breach its warranties regarding the Affected Products and has been and continues to be unjustly enriched. Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Affected Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

15.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this district and conducts a substantial part of its business regularly and continuously within New York.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district a substantial part of Defendant's conduct giving rise to the claims occurred in this District.

## PARTIES

17.     Plaintiff Madeleine Brand is a resident of the state of Tennessee. Plaintiff Brand purchased the Affected Products numerous times during the Class Period from Walmart retail stores located in Clarksville, Tennessee. Prior to purchasing the Affected Products, Plaintiff Brand read the Affected Products' labels and purchased the Affected Products in reliance on Defendant's

representation that the Affected Products contained only the ingredients listed on the Affected Products' packaging and were safe for consumption. Plaintiff Brand believed that the Affected Products that were advertised as dark chocolate did not contain lead. If Godiva remedied the issues identified in this complaint, Plaintiff Brand would resume purchasing the Affected Products.

18. Plaintiff John Bowden is a resident of the state of Virginia. Plaintiff Bowden purchased approximately two Affected Products each month, for the past four years, from a Walmart retail store located in Chesapeake, Virginia. Prior to purchasing the Affected Products, Plaintiff Bowden read the Affected Products' labels and purchased the Affected Products in reliance on Defendant's representation that the Affected Products contained only the ingredients listed on the Affected Products' packaging and were safe for consumption. Plaintiff Bowden believed that the Affected Products that were advertised as dark chocolate did not contain lead. If Godiva remedied the issues identified in this complaint, Plaintiff Bowden would resume purchasing the Affected Products.

19. Defendant Godiva Chocolatier, Inc d/b/a Godiva is incorporated in the state of New Jersey and maintains its headquarters in New York, New York. As part of its broader business, Defendant manufactures, advertises, labels, and sells dark chocolate, including the Affected Products, throughout the United States. Defendant created or authorized the creation and dissemination of the deceptive advertisements, packaging, and labeling associated with the Affected Products.

**FACTUAL ALLEGATIONS**

20. Consumers must and do rely on Defendant to truthfully and honestly report what their Affected Products contain on their packaging or labels. Companies, including Godiva as alleged herein, profit from consumers' search for safe and healthy products. Consumers will, and do, pay premiums for safe and healthy products.

21. While the advertising and marketing for the Affected Products is silent as to the lead present in the Affected Products, public reports and articles recently revealed that Defendant's Affected Products contain unsafe levels of lead. The levels of lead observed exceeded the MADL for lead; posing serious health risks to consumers. However, lead may cause harm even from small exposures.

22. Lead and cadmium, which were both present in the Affected Products, are heavy metals and their presence in food, alone or combined, poses a serious safety risk to consumers because they can cause cancer and other serious problems (often irreversible) such as damage to brain development, the liver, kidneys, and bones.[9]

23. California recognized lead and cadmium as "known to the state to cause cancer or reproductive toxicity . . ." after the state's qualified experts formed the opinion that both lead[10] and cadmium[11] were "shown through scientifically valid testing according to generally accepted principles to cause cancer or reproductive toxicity."[12]

24. The harmful effects of lead have been studied extensively, particularly its effect on children. Studies have shown that even lower levels of lead exposure in children may result in reduced neurobehavioral functioning, with symptoms ranging from neuropsychological deficits that interfere with classroom performance, lower IQ, decreased verbal processing and attention span.[13]

---

[9] *Heavy metals in food crops: Health risks, fate, mechanisms, and management*, SCIENCEDIRECT, https://www.sciencedirect.com/science/article/pii/S0160412018327971 (last visited January 12, 2023).
[10] *Lead and Lead Compounds*, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds (last visited January 12, 2023).
[11] Cadmium, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, https://oehha.ca.gov/proposition-65/chemicals/cadmium (last visited January 12, 2023).
[12] *See* Cal. Health & Safety Code § 25249.8(b).
[13] Theodore I. Lidsky and Jay S. Schneider, *Lead neurotoxicity in children: basic mechanisms and clinical correlates*, BRAIN, Vol. 126, Issue 1 (Jan. 2003) https://academic.oup.com/brain/article/126/1/5/299373#.Y79duQG8eOc.link (last visited January 12, 2023).

25. Lead can also cross the fetal barrier during pregnancy, exposing the developing fetus and mother to risks in the form of reduced growth and premature birth.[14]

26. More generally, lead may cause anemia, weakness, and kidney and brain damage.[15] In fact, lead accumulates over time and may affect almost every organ and system in a person's body, leading to toxicity and serious health risks, including inhibited neurological function, anemia, seizures, and, at worst, coma and death.[16]

27. Adults are also affected by lead toxicity, as the bones can store lead after initial exposure and re-expose the body by releasing the stored lead into the blood stream.[17]

28. Cadmium, a heavy metal like lead, also poses severe safety concerns for consumers.

29. Like lead, cadmium may cause complications in pregnant women such as fetal growth restriction.[18]

30. The World Health Organization classified cadmium as a Group 1 carcinogen in 2012,[19] and its exposure is known to cause a variety of cancers.[20] The US Center for Disease Control concurs with the World Health Organization and similarly considers cadmium to be "a cancer-causing agent."[21]

---

[14] See *Childhood Lead Poisoning Prevention: Pregnant Women,* CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/nceh/lead/prevention/pregnant.htm (last visited January 12, 2023).
[15] *The National Institute for Occupational Safety and Health (NIOSH): Lead*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/niosh/topics/lead/health.html (January 12, 2023).
[16] *Id.*
[17] See *Lead Exposure in Adults: A Guide for Health Care Providers,* STATE OF NEW YORK DEPARTMENT OF HEALTH, https://www.health.ny.gov/publications/2584.pdf (last visited January 12, 2023).
[18] Hui-Xia Geng et al, *Cadmium: Toxic Effects on Placental And Embryonic Development*, NIH: NATIONAL LIBRARY OF MEDICINE (Feb. 15, 2019) https://pubmed.ncbi.nlm.nih.gov/30797179/ (last visited Jan. 12, 2023)
[19] *IARC Monographs on the Identification of Carcinogenic Hazards to Humans: List of Classifications*, INTERNATIONAL AGENCY FOR RESEARCH ON CANCER – WORLD HEALTH ORGANIZATION, https://monographs.iarc.who.int/list-of-classifications (last visited Jan. 12, 2023).
[20] *Cancer Trends Progress Report: Cadmium*, NATIONAL CANCER INSTITUTE – NIH, https://progressreport.cancer.gov/prevention/cadmium#:~:text=Cadmium%20and%20its%20compounds%20are,the%20breast%20and%20urinary%20bladder. (last visited Jan. 12, 2023).
[21] *National Biomonitoring Program: Cadmium Factsheet*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/biomonitoring/Cadmium_FactSheet.html (last visited January 12, 2023).

31. When eaten, large amounts of cadmium can severely irritate the stomach and cause vomiting and diarrhea.[22] Even at low exposure levels, cadmium can build up in the kidneys and cause kidney disease and fragile bones.[23]

32. Consumers lack the meaningful ability to test or independently discover whether a product contains unhealthy substances such as lead, cadmium, or other unsafe substances, especially at the point of sale. The testing necessary to discover many unhealthy substances, including lead and cadmium, requires expensive and destructive scientific testing. Given the relatively low price of the Affected Products, no reasonable consumer would engage in such testing before purchasing the Affected Products.

33. Consumers must, instead, rely on Defendant to truthfully represent what its Affected Products contain on its packaging and labels.

34. However, public reports and articles recently revealed that Defendant's Affected Products contain lead and cadmium. The level of lead observed exceeded the MADL for this chemical; posing serious health risks. Despite these risks, Defendant failed to include any disclosures regarding lead and cadmium on its Affected Products.

35. Defendant knew and should have known of the lead and cadmium in the Affected Products. In 2016, Godiva (as well as other manufacturers and distributors) received notice that at least some of its dark chocolate products, including Godiva's Chocolatier 72% Cacao Dark bar, contained excessive cadmium and lead.[24] This notice came in the form of Proposition 65 Violation Notices which confirmed the presence of heavy metals in the Godiva products, including the

---

[22] *Id.*
[23] *Id.*
[24] *Are You Eating Toxic Chocolate? Lead Found in Trader Joe's, Hershey's and Other Chocolates*, ECOWATCH, https://www.ecowatch.com/are-you-eating-toxic-chocolate-lead-found-in-trader-joes-hersheys-and-1882199456.html (last visited Jan. 12, 2023).

Affected Products.[25]  In the intervening 6 years, Godiva has not remedied the issue, failing to warn consumers that the Affected Products would expose consumers to cadmium and lead when eaten.

36. Researchers looking into when lead and cadmium were introduced into the products have found that heavy metals were "typically found naturally in the outer shell of the cocoa bean, not in the bean itself."[26]  The beans were measured soon after being picked and removed from pods, showing low levels of cadmium and lead, but, as the beans dried, the levels increased.[27]  Consumer Reports and its researches concluded that "[d]uring that time, lead-filled dust and dirt accumulated on the beans."[28]  Thus, on information and belief, Godiva itself is responsible for lead being present in the Affected Products.

37. Additionally, Defendant has a responsibility to implement controls to significantly minimize or prevent unnecessary consumer exposure to the Heavy Metals in the Affected Products.  Godiva commits itself and its upstream supply chain to comply "with laws and regulations . . . ."[29]

38. Accordingly, Defendant is in the best position to test the Affected Products for lead and cadmium levels.

39. Despite representing that it complies with all relevant laws, Defendant sells the Affected Products containing heavy metals, including unsafe levels of lead.

40. Defendant knew that the Affected Products contain heavy metals, and failed to provide any warning on packaging or labels, that the Affected Products contain, or risk containing, lead and cadmium.

---

[25] See Danielle Fugere, *Notice of Violation of California Health and Safety Code § 25249.5 et seq.*, AS WE SOW (Mar. 24, 2016) https://oag.ca.gov/system/files/prop65/notices/2016-00256_0.pdf (last visited January 17, 2023).
[26] Kevin Loria, *Lead And Cadmium Could Be In Your Dark Chocolate*, CONSUMER REPORTS (Dec. 15, 2022) https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last visited Jan. 12, 2023).
[27] *Id.*
[28] *Id.*
[29] *Godiva's Responsible Cocoa Commitment*, GODIVA, https://www.godiva.com/responsible-cocoa-commitment (last visited January 17, 2023).

41. In making their purchasing decisions, consumers, such as Plaintiffs and the Class Members, are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the packaging of food they purchase. If Defendant had not failed to disclose that the Affected Products contained unsafe levels of lead and that the Affected Products were not safe for consumption, then Plaintiffs and the Class would not have paid a premium for the Affected Products (or purchased them at all).

42. Plaintiffs and the Class reasonably relied on the marketing, labeling, and information provided by Defendant in making purchasing decisions. By representing that the Affected Products contain only the ingredients listed on the Affected Products' labeling, and not disclosing the presence of the heavy metals, Defendant misled reasonable consumers, including Plaintiffs and the Class.

43. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

44. Plaintiffs would not have purchased the Affected Products, or would have paid less for them, had the Affected Products been truthfully and accurately labeled.

## **CLASS ALLEGATIONS**

45. Plaintiffs brings their claims for relief pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), or 23(b)(3) on behalf of the following Class (collectively "the Class"):

> All consumers who purchased one or more of the Affected Products in the United States within the applicable limitations period (the "Nationwide Class").

46. Plaintiff Bowden brings this class action individually and on behalf of the following Virginia subclass:

> All consumers who purchased one or more of the Affected Products in the state of Virginia within the applicable limitations period (the "Virginia Subclass").

47. Excluded from the Class is governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

48. The Nationwide Class and Virginia Subclass shall be referred to collectively throughout the Complaint as the Class.

49. The Nationwide Class and Virginia Subclass are properly brought and should be maintained as class actions under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

50. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believes that there are thousands of consumers in the Class who have been damaged by Defendant's deceptive and misleading practices.

51. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a. Whether Defendant's marketing, advertising, packing, and labeling for the Affected Products was false, misleading, and/or deceptive;

   b. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased its Affected Products;

   c. Whether the Affected Products contain unsafe levels of lead;

   d. Whether Defendant breached the implied warranty of merchantability relating to the Affected Products;

  e. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Affected Products;

  f. Whether Defendant's false and misleading statement concerning the Affected Products were likely to deceive the public; and

  g. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

52. **Typicality**: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

53. **Adequacy**: Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

54. **Predominance**: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

55. **Superiority**: A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court

system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

56. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### COUNT I

**VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT ("VCPA")**
Va. Code Ann. §§ 59.1-196 *et seq.*
**(On Behalf of Plaintiff Bowden and Virginia Subclass Members)**

57. Plaintiff Bowden repeats, re-alleges, and incorporates each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

58. The VCPA prohibits "fraudulent acts or practices by a supplier in connection with a consumer transaction," including:

    a. "misrepresenting that goods . . . have certain quantities, characteristics ingredients, uses, or benefits";

    b. "[m]isrepresenting that goods. . . are of a particular standard, quality, grade, style, or model";

    c. "[a]dvertising goods or services with intent not to sell them as advertised . . . ."; and

    d. "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

59. Defendant, Plaintiff Bowden, and the Virginia Subclass members are "[p]erson[s] within the meaning of Va. Code Ann. §59.1-198.

60. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

61. The Affected Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

62. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of §59.1-198.

63. Defendant's misrepresentations and omissions regarding the true ingredients, or the potential dangers posed by the true ingredients, contained within the Affected Products were disseminated to Plaintiff Bowden and the Class members in a uniform manner.

64. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Bowden and the Virginia Subclass members, about the presence of and dangers presented by lead in the Affected Products.

65. The facts regarding the Affected Products that Defendant misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff Bowden and the Virginia Subclass members, who consider such facts to be important to their purchase decisions with respect to the Affected Products.

66. Plaintiff Bowden and the Virginia Subclass members relied on Defendant's misrepresentations, omissions, and concealments with respect to the Affected Products by purchasing the Affected Products after Defendant's misrepresentations, omissions, and concealments were made.

67. Plaintiff Bowden and the Virginia subclass members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional

misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

68. Plaintiff Bowden and the Virginia Subclass were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding the Affected products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff Bowden and the Virginia Subclass members would not have purchased the Affected Products and they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

69. Defendant's violations present a continuing risk to Plaintiff Bowden and the Virginia Subclass members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

70. Defendant was provided notice of the issues raised in this Count and this Complaint by the watchdog group As You Sow in 2016, after As You Sow provided notice of Proposition 65 violations for its products containing lead and cadmium. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff Bowden seeks all damages and relief to which Plaintiff Bowden the Virginia Subclass members are entitled.

71. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiff Bowden and the Virginia Subclass members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

## COUNT II

**BREACH OF IMPLIED WARRANTY**
**(On Behalf of Plaintiffs and All Class Members)**

72. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73. Defendant manufactured, marketed, labeled, distributed, and sold the Affected Products, as part of its overall business.

74. The Affected Products are considered a "good" under the relevant laws.

75. For goods to be merchantable under UCC section 2-314, it must (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved.

76. Defendant breached the implied warranty of merchantability. The Affected Products, meant to be ingested, should not contain toxic levels of lead.

77. Defendant is on notice of its breach. In addition to widespread media reports, upon information and belief and based on representations made by Godiva, the Company is or should have been aware through its own product testing and records. In addition, on January 18, 2023, prior to filing this action, Plaintiffs served Defendant with a pre-suit notice letter.

78. The Affected Products contain toxic levels of lead. Plaintiffs and each of the members of the Class were injured as a result. Defendant thereby breached the following state warranty laws:

   a. Code of Ala. § 7-2-314;
   b. Alaska Stat. § 45.02.314;
   c. A.R.S. § 47-2314;
   d. A.C.A. § 4-2-314;
   e. Cal. Comm. Code § 2314;
   f. Colo. Rev. Stat. § 4-2-314;
   g. Conn. Gen. Stat. § 42a-2-314;
   h. 6 Del. C. § 2-314;
   i. D.C. Code § 28:2-314;
   j. Fla. Stat. § 672.314;

k. O.C.G.A. § 11-2-314;

l. H.R.S. § 490:2-314;

m. Idaho Code § 28-2-314;

n. 810 I.L.C.S. 5/2-314;

o. Ind. Code § 26-1-2-314;

p. Iowa Code § 554.2314;

q. K.S.A. § 84-2-314;

r. K.R.S. § 355.2-313;

s. 11 M.R.S. § 2-314;

t. Md. Commercial Law Code Ann. § 2-314;

u. 106 Mass. Gen. Laws Ann. § 2-314;

v. M.C.L.S. § 440.2314;

w. Minn. Stat. § 336.2-314;

x. Miss. Code Ann. § 75-2-314;

y. R.S. Mo. § 400.2-314;

z. Mont. Code Anno. § 30-2-314;

aa. Neb. Rev. Stat. § 2-314;

bb. Nev. Rev. Stat. Ann. § 104.2314;

cc. R.S.A. 382-A:2-314;

dd. N.J. Stat. Ann. § 12A:2-314;

ee. N.M. Stat. Ann. § 55-2-314;

ff. N.Y. U.C.C. Law § 2-314;

gg. N.C. Gen. Stat. § 25-2-314;

hh. N.D. Cent. Code § 41-02-31;

ii. II. O.R.C. Ann. § 1302.27;

  jj.  12A Okl. St. § 2-314;

  kk.  Or. Rev. Stat. § 72-3140;

  ll.  13 Pa. Rev. Stat. § 72-3140;

  mm.  R.I. Gen. Laws § 6A-2-314;

  nn.  S.C. Code Ann. § 36-2-314;

  oo.  S.D. Codified Laws, § 57A-2-314;

  pp.  Tenn. Code Ann. § 47-2-314;

  qq.  Tex. Bus. & Com. Code § 2.314;

  rr.  Utah Code Ann. § 70A-2-314;

  ss.  9A V.S.A. § 2-314;

  tt.  Va. Code Ann. § 8.2-314;

  uu.  Wash. Rev. Code Ann. § 6A.2-314;

  vv.  W. Va. Code § 46-2-314;

  ww.  Wis. Stat. § 402.314; and

  xx.  Wyo. Stat. § 34.1-2-314.

79. As a direct and proximate result of Defendant's breach of the implied warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Affected Products.

### COUNT III

### UNJUST ENRICHMENT
**(On Behalf of Plaintiffs and All Class Members in the Alternative)**

80. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

82. Plaintiffs and members of the Class conferred benefits on Defendant by purchasing the Affected Products.

83. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Affected Products.

84. Retention of those moneys under these circumstances is unjust and inequitable because Defendant has engaged, and continues to engage, in a systematic campaign of representing that the Affected Products do not contain unsafe levels of lead, and concealing and omitting material facts regarding the true nature of the Affected Products. These false representations and omissions caused injuries to Plaintiffs and members of the Class because they would not have purchased the Affected Products, if at all, if they knew that the Affected Products contained lead.

85. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated, seek judgment against the Defendant as follows:

(a) For an order determining that this action is properly brought as a class action and certifying Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

(b) For an order declaring the Defendant's conduct violates the laws referenced herein;

(c) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d) For damages in amounts to be determined by the Court and/or jury;

(e) An award of statutory damages or penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of monetary relief; and

(h) Such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 20, 2023                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: /s/ Mark S. Reich
 Mark S. Reich (MR4166)
 Courtney E. Maccarone (CM5863)
 Gary S. Ishimoto*
 55 Broadway, 10th Floor
 New York, NY 10006
 Telephone: (212) 363-7500
 Facsimile: (212) 363-7171
 Email: mreich@zlk.com
 Email: cmaccarone@zlk.com
 Email: gishimoto@zlk.com

*Attorneys for Plaintiffs*

**pro hac vice* application forthcoming*